558 P.2d 76

**Homer F. RAMSEYER, Plaintiff and Coun-
ter-Defendant-Appellant,**

v.

**Donald D. RAMSEYER et al., Defendants
and Counter-Claimants-Respondents.**

No. 11939.

Supreme Court of Idaho.

Dec. 29, 1976.

Lloyd J. Walker, Walker & Kennedy, Twin Falls, for appellant.

Frederick F. Plankey, Plankey, Johnson, Kvanvig & Stoker, Twin Falls, for respondents Donald D. Ramseyer and Antelope Springs Land and Cattle Co.

Paul M. Beeks, Smith & Beeks, Twin Falls, for respondent H. Duane Ramseyer.

HAGAN, District Judge.

■ Plaintiff-appellant Homer F. Ramseyer brought this action for a judicial dissolution and accounting of an oral partnership among him and his sons, H. Duane Ramseyer and Donald D. Ramseyer.[1] Appellant's sons defended this action, contending that the partnership had been dissolved by mutual agreement and accounts between the partners settled, and that appellant's cause of action was barred by the statute of limitations. They also counterclaimed for specific performance by appellant of an alleged agreement to execute documents necessary to the division of partnership assets and for reformation of certain documents to include terms of the dissolution agreement omitted by mutual mistake. Following a trial to the court, judgment was entered dismissing appellant's complaint on the finding and conclusion that the partnership had been dissolved and accounts settled, and that appellant's action had not been brought within the period of the statute of limitations. Judgment was entered in favor of respondents on their counterclaims. Appellant's motions to · amend the judgment and to amend the findings of fact and conclusions of law were denied. Appellant brings this appeal from the judgment.[2] The judgment of the trial court is affirmed.

From approximately 1959, and perhaps as early as 1957, to 1969, appellant and respondents conducted a cattle ranching business as equal partners pursuant to an oral agreement. The partnership, Ramseyer Cattle Co., owned and operated two major ranches, Antelope Springs Ranch and Grassy Hills Ranch. In addition, the partnership owned grazing rights on adjoining federal land (quantified in numbers of animal unit months—abbreviated as AUMs) and state land leases. Partnership assets also included several hundred head of cattle and miscellaneous equipment.

Appellant's second wife, Ebony Ramseyer, whom he married in 1958, filed for divorce in May of 1969. Subsequently, on June 12, 1969, appellant executed a deed conveying to respondents his interest in Antelope Springs Ranch and sold to respondents by bill of sale his interest in the cattle owned by the partnership. On the same date, respondents executed a deed conveying Grassy Hills Ranch to appellant and agreed orally to pay $20,000.00 to appellant's daughter. Respondents also assumed certain partnership debts, and the respective grantees assumed outstanding liabilities against the real property each received.

After June 12, 1969, respondents continued to operate a cattle ranching business as a partnership under the name of Ramseyer Cattle Company. Appellant operated Grassy Hills Ranch independently, occasionally selling hay to respondents. At a later, unspecified date, appellant sold the Grassy Hills Ranch. Respondents did not receive any of the proceeds of the sale. There were defects in the deeds made and delivered in June of 1969 in that they did not contain all AUMs and water rights the parties intended to transfer. Also, the assignment forms provided by the State of Idaho for the formal transfer of State leases were not executed.

In October of 1973, appellant filed his complaint against respondents seeking judicial dissolution of the old partnership and an accounting from respondents for transactions since 1969 involving the assets of

1. In January of 1969, Donald Ramseyer conveyed his interest in the partnership to Antelope Springs Land and Cattle Co., a corporation wholly owned by him and his daughter. With this substitution the partnership continued to conduct business as before. Antelope Springs Land and Cattle Co. was joined as a party defendant by stipulation. For convenience we will refer to Donald Ramseyer whenever it would be appropriate to refer to the interest and rights of Antelope Springs Land and Cattle Co.

2. Appellant's notice of appeal states that the appeal is also taken from the orders of the district court denying his post-trial motions. However, there is no assignment of error with respect to these orders, no citation of authority, and no argument on them. Therefore, we do not consider them.

the old partnership. Respondents answered the complaint alleging the old partnership had been dissolved by mutual, oral agreement in 1966, and raised as affirmative defenses the final settlement and winding-up of the old partnership completed on June 12, 1969, which extinguished all claims among the parties, and the bar of the statute of limitations on all claims arising out of the old partnership.

Respondents counterclaimed for reformation as necessary of the deeds of conveyance between the parties to include all appurtenant water rights and grazing rights (AUMs) omitted by mutual mistake, and for specific performance of the parties' oral agreement to execute the necessary assignment forms for transfer of the state land leases appurtenant to the real property exchanged. Appellant answered the counterclaim denying the old partnership had been dissolved and its affairs wound up. He further denied any mistakes had been made in the deeds and that any state land leases were to be transferred.

The trial court found the parties had agreed in June of 1969 to divide the assets and debts of the old partnership between them and that the agreement was executed except with respect to the AUMs, water rights and the state land leases. The court also found the parties operated independently after June 12, 1969, and that the agreement of that date was a full and complete settlement of the parties' partnership interests.

The trial court concluded there was an agreement to dissolve and complete dissolution of the old partnership on June 12, 1969, and that the partnership accounts were settled on then leaving no subsequent right to an accounting. The court held appellant's cause of action for an accounting of his partnership interest accrued on the date of dissolution and was barred by the statute of limitations after four years. Judgment was entered dismissing appellant's complaint. The trial court ordered title quieted in the real property exchanged

in 1969 and decreed appellant had no right in any partnership property given to respondents in 1969. Judgment was entered for respondents on their counter-claims for reformation of the deeds and for specific performance of the agreement to transfer the state land leases.

Appellant makes several assignments of error. These assignments basically challenge the sufficiency of the evidence to sustain the trial court's findings of fact and the correctness of the trial court's conclusions of law. We believe that this case presents two issues: (1) Does the evidence support the finding of a dissolution of the partnership?; and, (2) Does appellant have a right to an accounting? In our review of this case, we are guided by the rule the trial court findings supported by substantial and competent, though conflicting, evidence will not be set aside unless clearly erroneous and will ordinarily be sustained on appeal. *Ridley v. VanderBoegh,* 95 Idaho 456, 511 P.2d 273 (1973); *Dunn v. Baugh,* 95 Idaho 236, 506 P.2d 463 (1973); *Elliot v. Elliot,* 88 Idaho 81, 396 P.2d 719 (1964); *Kraiter v. Jerome,* 79 Idaho 148, 312 P.2d 1034 (1957); *Bussell v. Barry,* 61 Idaho 350, 102 P.2d 280 (1940).

There is no dispute the Ramseyer partnership is governed by applicable provisions of the Uniform Partnership Law (UPL), Title 53, Ch. 3, Idaho Code, § 53–301 et seq. However, it should be noted some specific provisions of the UPL are applicable only in the absence of an agreement to the contrary by the parties. I.C. § 53–329, defines "dissolution" as follows:

"The dissolution of a partnership is the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on as distinguished from the winding up of the business."

So defined "dissolution" is a legal term of art. It does not refer to the other steps in the process of completing and finishing a partnership relationship.

"On dissolution the partnership is not terminated, but continues until the winding up of partnership affairs is completed." I.C. § 53–330

E. g., *Spencer v. Spencer,* 91 Idaho 880, 884, 434 P.2d 98, 102 (1967); *Elliot v. Elliot, supra,* 88 Idaho at 86, 396 P.2d at 722; *Barron v. Koenig,* 80 Idaho 28, 42, 324 P. 2d 388, 396 (1958).

▊ A partnership relationship is legally ended and its affairs completed when the three steps of (1) dissolution, (2) winding-up or liquidation, and (3) termination are finished. *Timmermann v. Timmermann,* 538 P.2d 1254, 1260 (Or.1975); *Heathington v. Heathington Lumber Co.,* 420 S.W.2d 252, 254 (Tex.Civ.App.1967). Initially we are concerned solely with the question of the dissolution of the Ramseyer partnership.

Appellant's complaint sought a judicial dissolution pursuant to I.C. § 53–332. Judicial dissolution is provided for in several situations. Here, however, the trial court found that the Ramseyers had effected a dissolution of their partnership by their voluntary acts of June 12, 1969. I.C. § 53–331 specifies several non-judicial causes of dissolution, both voluntary and involuntary. In pertinent part those causes include:

"53–331. *Causes of Dissolution.*—Dissolution is caused:

1. Without violation of the agreement between the partners.

a.  .   .   .

b. By express will of any partner when no definite term or particular undertaking is specified.

c. By the express will of all the partners who have not assigned their interests or suffered them to be charged for their separate debts, either before or after the termination of any specified term or particular undertaking.

.   .   .   .   .   .

2. In contravention of the agreement between the partners, where the cir-

cumstances do not permit a dissolution under any other provision of this section, by the express will of any partner at any time. .   .   . "

The trial court here did not conclude which specific section governed the dissolution it found, though its conclusion that the dissolution was by the mutual agreement of the partners would bring the dissolution within I.C. § 53–331(1)(c).

▊ The assets exchanged by the Ramseyers on June 12, 1969, constituted the assets of the partnership. After that date, appellant no longer participated in the management of the Antelope Springs Ranch, no longer wrote checks on the partnership checking account, and no longer shared in the profits or losses of the operation as the respondents organized and continued it. This "ceasing to be associated in the carrying on  .   .   . of the business" is uncontradicted evidence of a dissolution of the partnership.

Appellant contends the exchange of property was not made pursuant to any "agreement" to dissolve the partnership. Rather he asserts the purpose of the exchange was to minimize his community estate in view of a pending divorce action. We know of no principle of community property law by which either spouse could achieve such a result, considering the fact the husband, as manager of the community under the law at the time the divorce was granted, owed a fiduciary duty to the wife to account for the community property. *Sande v. Sande,* 83 Idaho 233, 360 P.2d 998 (1961); *Parke v. Parke,* 72 Idaho 435, 242 P.2d 860 (1952). The evidence is clear appellant and respondents understood that the exchange of property was final. The details of the exchange and the documentation were arrived at by appellant and an attorney of his choosing. Respondents testified the exchange was not their idea and they just went along with their father and his attorney.

Appellant also contends the old partnership was not dissolved because respondents continued to conduct a similar operation

under the same name and with the same assets after June 12, 1969. However, the assets of the new partnership were not the same as those of the old partnership. Appellant himself was in possession of a sizeable portion of the real property formerly used as partnership real property. Moreover, appellant was no longer liable on the old partnership's debts. Respondents also assumed a new obligation to their sister on appellant's behalf. In these circumstances, we find no error in the court's determination the old partnership had been dissolved.

■ Before reaching the question of appellant's right to an accounting, we must first consider the contention the old partnership had not been wound-up.

Where partners to a dissolved partnership have agreed upon a settlement and disposition of their partnership accounts, liabilities inter se, and obligations to partnership creditors, they have accomplished a winding-up of partnership affairs. An agreement of this nature—whether denominated a private settlement and account, or extrajudicial agreement, and whether oral or in writing—is presumed to include all disputed matters among the partners, and will be final and conclusive upon them in the absence of fraud, mistake or duress. *Bussell v. Barry, supra,* 61 Idaho at 356–57, 102 P.2d at 283; *Brand v. Elledge,* 101 Ariz. 352, 419 P.2d 531, 537 (1966). There is no allegation of fraud, mistake or duress in appellant's complaint, nor is there evidence of any in the record. All the partnership assets were divided, so far as the record shows, the partners' respective interests were settled, and agreement was reached on the assumption by respondents of outstanding partnership liabilities.

We find no error in the trial court's conclusion the transactions of June 12, 1969, constituted both a dissolution of the partnership and a winding-up of partnership affairs. After that date, there was nothing left for the parties to do except to execute their respective agreements made as part of the settlement. It appears this

was done except with respect to those items on which respondents' counterclaim sought relief.

■ After determining that the old partnership was dissolved and wound-up, the trial court held appellant's cause of action for an accounting was barred by the statute of limitations. The applicable statute of limitation period is four years, under either I.C. § 5–217 for actions on oral contracts or I.C. § 5–224 for actions for relief not covered by any specific statute. The crucial question is when appellant's cause of action accrued.

The time when a cause of action for a partnership accounting accrues is specified by statute. I.C. § 53–343 provides:

"The right to an account of his interest shall accrue to any partner, or his legal representative, as against the winding up partners or the surviving partners or the person or partnership continuing the business, at the date of dissolution, in the absence of any agreement to the contrary."

We find under the clear language of this statute, appellant's cause of action for an accounting accrued on June 12, 1969, and was barred on June 12, 1973, four months before appellant filed his complaint.

In some jurisdictions, either by statute or judicial interpretation, a cause of action for an accounting does not accrue until the cessation of partnership transactions, including those transactions which are part of the winding-up process. *Waters v. Cochran,* 291 Ala. 610, 285 So.2d 474, 479–81 (1973); *Brand v. Elledge, supra,* 419 P.2d at 538–40; *Green v. Kensinger,* 199 Kan. 220, 429 P.2d 95, 99–100 (1967); *Easley v. Clay,* 16 S.W.2d 888, 890 (Tex. Civ.App.1929). Under the language of I.C. § 53–343, we cannot reach such a result. However, appellant advances an argument which would permit such a result under other sections of the UPL.

Appellant contends a partner's right to an accounting does not derive solely from

I.C. § 53–343. Appellant contends that § 53–343 applies only to a partner's "interest in the partnership," one of three distinct property rights a partner has by virtue of I.C. § 53–324.

"53–324. *Extent of property rights of a partner*.—The property rights of a partner are:

1. His rights in specific partnership property.

2. His interest in the partnership.

3. His right to participate in the management."

A partner's right to an accounting with respect to the other two property rights is said to follow from the provisions of I.C. § 53–322, which provides:

"53–322. *Right to an account*.—Any partner shall have the right to a formal account as to partnership affairs:

1. If he is wrongfully excluded from the partnership business or possession of its property by his copartners.

2. If the right exists under the terms of any agreement.

3. As provided by section 53–321.

4. Whenever other circumstances render it just and reasonable."

Appellant argues in particular the reference to I.C. § 53–321 provides for a right to an accounting for transactions connected with the winding-up process. I.C. § 53–321 provides in pertinent part:

"53–321. *Partner accountable as fiduciary*.—1. Every partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him of its property."

It has been recognized that a purpose of I.C. § 53–322 was to broaden the circumstances in which a partner is entitled to an accounting. Crane & Bromberg on Partnership, § 72, at 412–13 (1968). Given the fiduciary duty of a winding-up partner during the winding-up period, *Spencer v. Spencer, supra,* it does not seem out of place to provide for a right to an accounting measured not by the period of time from the date of dissolution, but rather by a period of time from the date of the last transaction connected with the winding-up process which follows upon dissolution.

But in this case, such an accounting would be limited to the assets which are the subject matter of defendants' counterclaim, i. e., the appurtenant water rights and grazing rights (AUMs) and the state land leases, which assets, again, were transferred by the agreement of June 12, 1969. The trial court ordered only the reformation of mistakes in the transfers and specific performance of the formal lease transfers. None of the parties have prayed for an accounting of these items, and appellant has not assigned as error in this appeal the trial court's order for reformation and specific performance. The only import of these particular assets is appellant's contention the failure of distribution thereof is evidence of the continuation of the winding-up process after June 12, 1969. An accounting under I.C. § 53–321 is inapplicable to this dispute, both under the facts and the pleadings. Therefore, I. C. § 53–343 is applicable, and the right to an accounting accrued at the time of dissolution.

Appellant's final argument is that the running of the statute of limitations should be tolled by his lack of knowledge there had been a change in the partnership relationship causing a dissolution. Existing statutes provide an adequate period of time for an aggrieved partner, acting as a reasonably prudent business person, to discover any cause of action he may have against his partners or the partnership, in the absence of fraud, coercion or duress. There is no evidence or contention of the latter here, and indeed the record does not support appellant's claim of a lack of knowledge. *Markstaller v. Markstaller,* 80 Idaho 129, 326 P.2d 994 (1958), cited by

appellant, is inapplicable to this case. The trial court did not err in entering judgment dismissing appellant's complaint.

Judgment affirmed. Costs to respondents.

McFADDEN, C. J., and DONALDSON, SHEPARD and BAKES, JJ., concur.